UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHRYSTIN PLEASANTS, )
Plaintiff, )
vs. ) No. 4:06-CV-1516 (CEJ)
AMERICAN EXPRESS COMPANY, et al., )
Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant American Express Incentive Services to compel arbitration. Plaintiff opposes the motion and the issues are fully briefed.

**I. Background**

As a reward for plaintiff's participation in several marketing and promotional activities, the defendant issued plaintiff three prepaid or "stored value" cards. Each of the cards was assigned a maximum dollar value, and the cards could be used to purchase merchandise and services. The three cards plaintiff received had a total value of $35.00.[1]

Accompanying each prepaid card, was a document titled "Card Terms and Conditions." Relevant to the instant motion, the Terms and Conditions contained the following provisions:

> **Participant Agreement**
> **1. Please read the following information governing this Card and retain for your records. Please sign the Card immediately. By accepting and retaining the Card, signing the Card or using the Card, you agree to all the terms and conditions in this participant agreement, as**

[1] The cards had original stored values of $20, $10 and $5.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**well as future terms and conditions and program/service changes. . . As used herein, "Card" means the incentive Card issued to you. The term "Agreement" means the participant attached to or enclosed with the Card. The terms "you and your" means the person to whom the Card was issued. "We, our, us and AEIS" refer to American Express Incentive Services, LLC, as the issuer of the Card. . .**

**********

**Arbitration**

**15. Purpose: This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.**

**Definitions: As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Card or this Agreement, as well as any related or prior agreement that you have had with us or the relationships resulting from this Agreement, including the validity, enforceability or scope of this Arbitration Provision or the Agreement. . . "Claim" includes claims of every kind and nature, including but not limited to initial claims, counterclaims, crossclaims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. . . The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and with limitation, any claim, dispute or controversy that arises from or relates to (a) the Card; (b) the amount of available points on the Card; (c) advertisements, promotions or oral or written statements related to the Card, goods or services purchased with the Card; (d) any benefits and services related to the Card; and (e) your enrollment for or activation of the Card. We shall not elect to use arbitration under the Arbitration Provision that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.**

**Initiation of Arbitration Proceeding/Selection of Administrator: Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**referred in effect at the time the Claim is filed (the "Code"). . .**

**********

**Significance of Arbitration: IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. OR TO HAVE THEIR CLAIMS RESOLVED EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF [list of arbitration organizations] . . . FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. . .**

The Arbitration Provision further provides that the cardholder is responsible for paying a share of the arbitration fees in an amount not exceeding the amount of the filing fee that would have been paid if the claim were brought in a state or federal court. The defendant, AEIS, agreed to be responsible for paying the remainder of the arbitration fees.

In the complaint, plaintiff alleges that she used all three cards on June 18, 2006, at a restaurant. At the time, plaintiff's cards had a total remaining value of $25.29.[2] The restaurant charged the cards for a total amount of $65.29.[3] Despite the fact that the cards stated they could not be used for over the amount

---

[2]At the time of purchase, the Cards used by Plaintiff had stored values of $20, $5 and $0.29.

[3]Plaintiff asserts that the restaurant tab was around $20.00 and that the restaurant mistakenly overcharged her by about $45.00. Defendant contends that plaintiff's restaurant tab was the full $65.29 and that plaintiff simply underpaid her bill. Because this issue bears little, if any, importance on whether the arbitration clause is valid, the Court finds it unnecessary to resolve this dispute.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

stored on the card, defendant allowed the $45.00 overcharge.[4] Several days later, defendant sent plaintiff a bill for $45.00, the amount of the overcharge. In July, 2006, defendant sent a second bill, assessing the $45.00 overcharge along with a $25.00 shortage fee and a $10.00 late fee.

Plaintiff initiated this action, individually and on behalf of a purported class, claiming violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., and Federal Reserve Board Regulation Z, 12 C.F.R. § 226 *et seq*. Plaintiff claims that, by allowing her cards to be charged for an amount over what was stored on them, defendant extended credit to plaintiff without any request or application to do so, and without satisfying TILA's disclosure requirements. Plaintiff seeks actual and statutory damages, together with attorney's fees and costs.

Defendant moves to compel arbitration pursuant to the Arbitration Provision set forth in the Terms and Conditions that

---

[4]Section 8 of the Terms and Conditions states:
**If you attempt to use the Card for an amount greater than your available point balance, the transaction, in most cases, will be declined. If the establishment accepts supplemental payment (see Supplemental Payment above), you should instruct the establishment to apply an amount not to exceed the points available on the Card, and inform them that you will pay the balance with another form of payment. If, for any reason whatsoever, a transaction is processed despite insufficient available points on the Card (creating a "negative" amount, referred to herein as a "Shortage") you agree to reimburse us, upon request, for the amount of the Shortage. In addition, we reserve the right to charge a Shortage fee of $25 per transaction every time your use of the Card results in a Shortage, subject to applicable law.**

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

accompanied the cards. Plaintiff contends that the Arbitration Provision is unconscionable and offends the public policy of the State of Missouri. Plaintiff further argues that the Arbitration Provision was not part of the parties' agreement with respect to the prepaid cards.

## II. Discussion

The Federal Arbitration Act (FAA) provides that written agreements to solve disputes through arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract and may be voided under state law on grounds, such as unconscionability, fraud or duress, that would generally apply to any contract provision." 9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 24-25 (1983). As a matter of law, questions regarding arbitrability should be resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Id. A federal court must compel arbitration once it determines that the dispute falls within the scope of a valid arbitration agreement. 9 U.S.C. §§ 3,4; Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004).

The parties do not appear to dispute that, if the Arbitration Provision is valid, plaintiff's claim would fall within its scope.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Therefore, the sole question before the Court is whether there is a valid agreement to arbitrate. In making this determination, "Missouri contract law governs." Lyster v. Ryan's Family Seak Houses, Inc., 239 F.3d 943, 946 (8th Cir. 2001).

The basic elements of a contract are offer, acceptance of the offer, and consideration to support the agreement. Luebbert v. Simmons, 98 S.W.3d 72, 77 (Mo. App. 2003). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to submit." Abrams v. Four Seasons Lakesites/Chase Resorts, Inc., 925 S.W.2d 932, 937 (Mo. App. 1996). "An unconscionable contract or clause of a contract will not be enforced." State ex rel. Vincent v. Schneider, 194 S.W.3d 853, 858 (Mo. banc 2006).

Plaintiff argues that the Arbitration Provision is not part of the agreement between the parties. First, plaintiff states in an affidavit that "to the best of [her] recollection" the Terms and Conditions page that contained the arbitration clause did not accompany her cards. Defendant has submitted copies of the complete Terms and Conditions, asserting that they are identical to that which, pursuant to company policy, accompanied every card. Defendant's production and inventory manager states in an affidavit that each card was mailed to plaintiff's home address and contained a "card carrier" sheet, along with the complete Terms and Conditions. Plaintiff admits to receiving the "card carrier" sheet, along with one page of the Terms and Conditions, but neither admits nor denies receiving the additional sheet which contained the arbitration clause. The Court finds that defendants have

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

created a presumption that plaintiff received the arbitration clause. See Johnson v. Arrow Financial Services, LLC, 2006 WL 2710663 at *4 (N.D.Ill. 2006)(presumption that plaintiff received the Card Agreements sent according to company policy was not rebutted by plaintiffs assertion that they 'do not recall' receiving them). Plaintiff's contention that she does not remember receiving the second page of the Terms and Conditions is not sufficient to overcome this presumption. It is noteworthy that the page of the document that plaintiff admits receiving explicitly refers, in all-caps font, to the other page of Terms and Conditions.

Plaintiff next argues that the Arbitration Provision was not part of the agreement because she did not receive the Terms and Conditions until after she had completed the marketing activities. Defendant argues that, had plaintiff been unwilling to accept the Arbitration Provision, she could have returned or destroyed the cards. There would have been no cost to plaintiff because she did not pay for the cards.[5] Plaintiff, however, used the cards, knowing that there were conditions attached to doing so. The use of the cards amounted to acceptance of the cards' terms and conditions.[6] See Fahey v. U.S. Bank Nat. Ass'n, 2006 WL 2850529, *2 (E.D. Mo. 2006)("use of credit cards amounts to acceptance of terms

[5] Of course, plaintiff did participate in promotional and marketing activities in exchange for the cards, and to that extent, the cards were not merely gifts.

[6] As recited above, the Participant Agreement clearly states that the cardholder agrees to all terms and conditions by accepting, retaining, signing or using the prepaid card.



PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of the cardholder agreement"); Davis v. JP Morgan Chase Bank, 2004 WL 783382 (N.D.Ill. 2004)(cardholders accepted modification of arbitration agreement by continuing to use credit card after receiving notification that terms and conditions had changed). By using the cards without objecting, plaintiff demonstrated acceptance of those conditions, including the Arbitration Provision.

The Court now turns to the issue of whether or not the Arbitration Provision is valid. Plaintiff claims that the provision is unconscionable because it prohibits class action arbitration. "Generally applicable state law contract defenses, such as fraud, duress and unconscionability, may be used to invalidate arbitration agreements without contravening the FAA." Swain v. Auto Servs., Inc., 128 S.W.3d 103, 107 (Mo.App. E.D. 2003); see also Doctor's Assocs. Inc. v. Casarotto, 517 U.S. 681, 682 (1996). However, in light of federal policy favoring arbitration agreements, they "are to be enforced unless the party can show that it will not be able to vindicate its rights in the arbitral forum." Faber, 367 F.3d at 1052.

Under Missouri law, to determine whether a contract is unconscionable, the court ascertains the totality of the circumstances weighing evidence of both procedural and substantive unconscionability. Whitney v. Alltel Comm., Inc., 173 S.W.3d 300, 309 (Mo.App. W.D. 2005). "Procedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

misrepresentation, or unequal bargaining position." Id. at 308. Substantive unconscionability involves undue harshness in the contract terms themselves. Id. "Generally there must be both procedural and also substantive unconscionability before a contract or a clause can be voided." Id. However, "if there exists gross procedural unconscionability then not much be needed by the way of substantive unconscionability, and that the same 'sliding scale' be applied if there be great substantive unconscionability but little procedural unconscionability." Id.

Plaintiff relies on Doerhoff v. General Growth Properties, Inc., 2006 WL 3210502 (W.D.Mo. 2006), to support her contention that the arbitration clause is invalid because it prohibits claims brought as a class action. In Doerhoff, the court found that an arbitration clause prohibiting class action claims was unconscionable because it "force[d] customers to individually arbitrate claims that only amount to a few dollars." Id. at *6. The court noted that, because of the costs involved in pursuing a claim, "[f]ew plaintiffs would likely undertake such a scheme if not allowed to join in a class action." Id. The court also found that the arbitration clause was presented in fine print, in a "take it or leave it" fashion, and forced the claimant to pay most of the fees for any claim they initiated. Plaintiff also cites Whitney, *supra*, in which the Missouri Court of Appeals found unconscionable an arbitration clause that prohibited class actions and prohibited awards of any attorney fees or incidental, consequential, or punitive damages. See Whitney, 173 S.W.3d at 312.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Unlike the arbitration clauses in Doerhoff or Whitney, the Arbitration Provision in this case was presented in the same print as the rest of the terms and conditions, and the relevant class action waiver was presented in all-caps font. The conspicuous manner in which the arbitration clause was presented distinguishes this case from those which found the clauses invalid. The Court concludes that there is little, if any, procedural unconscionability present in this matter.

Further, the Court finds that no substantive unconscionability exists. Unlike the plaintiffs in Doerhoff or Whitney, plaintiff here bases her claims on TILA. Under TILA's remedial provision, 15 U.S.C. § 1640(a)(3), plaintiff, if successful, is entitled to the "costs of the action, together with a reasonable attorney's fee as determined by the court." Indeed, several courts have upheld class action waivers in arbitration clauses because the statutory damages provided for by TILA would protect plaintiffs proceeding on an individual basis. See Snowden v. Checkpoint Check Cashing, 290 F.3d 631, 638-39 (4th Cir. 2002)(finding that unconscionability argument is unfounded in light of TILA's provision granting attorney fees); Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir. 2000)("Attorneys' fees are recoverable under the TILA, see 15 U.S.C. § 1640(a)(3), and would therefore appear to be recoverable in arbitration, as arbitrators possess the power to fashion the same relief as courts."). Plaintiff, even without the class action mechanism, is able to "vindicate [her] rights in the arbitral forum." Faber, 367 F.3d at 1052. The Arbitration

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Provision does not prevent plaintiff from obtaining the relief TILA is designed to afford.

Further, the Arbitration Provision provides that plaintiff's costs would not exceed the amount of the filing fees that plaintiff would incur by filing suit in district court. Plaintiff's costs will not increase even if she is unsuccessful in arbitration. In addition, the Arbitration Provision allows plaintiff to choose one of three established arbitration organizations to handle the dispute. The terms of the provision are not unduly harsh.

The Court concludes that the Arbitration Provision is valid and that its prohibition on class actions is not unconscionable. Because the parties' dispute in this actions is within the scope of the valid Arbitration Provision, the motion to compel arbitration will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion [#20] to compel arbitration and to dismiss is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's individual claims are to be adjudicated by arbitration in accordance with the parties' agreement set forth above.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 17th day of August, 2007.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com